**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

**D.B., an Infant, By and Through**
**His Parents and Next Friends,**
**Deardre D. Bebeau and Daniel J. Bebeau, Sr.;**
**Deardre D. Bebeau, Individually;**
**and Daniel J. Bebeau, Sr.,**
**Individually**

          **Plaintiffs.**

                                            **CASE NO.:**  2:18cv291

**v.**

**UNITED STATES OF AMERICA,**

          **Defendant.**

**SERVE:**      **The Honorable Jeff Sessions**
                  **United States Attorney General**
                  **U.S. Department of Justice**
                  **950 Pennsylvania Avenue, N.W.**
                  **Washington, DC 20530-0001**

**SERVE:**      **Tracy Doherty-McCormick**
                  **Office of the United States Attorney**
                  **for the Eastern District of Virginia**
                  **World Trade Center, Suite 8000**
                  **101 West Main Street**
                  **Norfolk, VA 23510**

## **COMPLAINT**

The Plaintiffs, D.B., a minor, by and through his parents and next friends, Deardre D. Bebeau and Daniel J. Bebeau, Sr., and Deardre D. Bebeau and Daniel J. Bebeau, Sr., Individually, by counsel, state as their Complaint against the Defendant, the United States of America, as follows:

## JURISDICTION AND PARTIES

1.      This is a medical negligence action, brought under the "Federal Tort Claims Act" (hereinafter "FTCA"), for severe and permanent injuries arising out of the negligent or wrongful acts and/or omissions of employees, actual and/or apparent agents, servants, or representatives of the United States, while acting within the course and scope of their employment, actual and/or apparent authority, servitude, or representative capacity, under circumstances where the United States of America, if a private person, would be liable to the Plaintiff under the laws of Guam, where the acts or omissions occurred. *See* 28 U.S.C. §1346(b).

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1346(b) and 28 U.S.C. §2671 *et seq.,* which vest exclusive subject matter jurisdiction of Federal Tort Claims against the United States in the Federal District Court.

3.      Plaintiffs D.B., and his parents, Deardre D. Bebeau and Daniel J. Bebeau, Sr., reside in Virginia Beach, Virginia, which is within the jurisdiction of this Court.

4.      The Defendant is the United States of America.

5.      At all times relevant to the Complaint, the Defendant, the United States of America, was the employer of health care providers who administered care and treatment to Deardre D. Bebeau, while she was admitted to the Mother-Baby Unit ("MBU") at the U.S. Naval Hospital, Guam, and to her baby, D.B., during the labor and delivery and after he was born during the newborn period.

6.      Defendant, United States of America, may be served with process in accordance with Rule 4(i) of the Federal rules of Civil Procedure by serving a copy of the Summons and Complaint on Tracy Doherty-McCormick, United States Attorney for the Eastern District of Virginia, and/or a designated agent for service of process at World Trade Center, Suite 8000, 101

West Main Street, Norfolk, VA 23510; by serving a copy of the Summons and Complaint on Attorney General of the United States of America, Jeff Sessions by certified mail, return receipt requested, at the U.S. Attorney General's Office, 950 Pennsylvania Ave, N.W., Washington, D.C. 20530-0001, to the attention of the Civil division.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(e), because the United States is a Defendant, the Plaintiffs reside in the district, and no real property is involved in the action.

8.      The United States Navy is an agency of the United States of America.  The United States of America, Defendant herein, through its agency, the United States Navy, at all times material hereto, owned, operated, and controlled the health care facilities known as the U.S. Naval Hospital, Guam, in the Territory of Guam, and through its agency, the United States Navy, staffed said health care facilities with its agents, servants, and/or employees.

9.      At all times material hereto, all persons involved in the medical and health care services provided to Plaintiffs at the U.S. Naval Hospital, Guam in the Territory of Guam, or some other agency thereof, including but not limited to John McDonnell, M.D., Tuan Hoang, M.D., Stephanie Stratton, M.D., Samuel F. Livingston, M.D., Protegenie Reed, C.N.M., Anna Kristina Serrana Itugot, R.N. f/k/a Anna Serrana, R.N., Mary K. Brumbeloe, R.N., Vicky A. Rodriguez, "LT Jackson", "HN Challinor", and the respiratory therapist, were, at all times material hereto, the servants, actual and/or apparent agents, employees, and representatives of the United States and acting within the course and scope of such employment.

10.      In this Complaint, whenever the term "Defendant" is used, it means the United States of America and its officers, agents, servants, employees, and/or representatives. Whenever in this Complaint it is alleged that Defendant did any act or thing, it is meant to include and

allege that the Defendant's officers, agents, servants, employees, and/or representatives did such act or thing, and that, at the time such act or thing was done, it was done with the full authorization and ratification of Defendant and was done in the normal and routine course and scope of their employment. Whenever in this Complaint it is alleged that Defendant omitted any act or thing, it is meant to include and allege that the Defendant's officers, agents, servants, employees, and/or representatives omitted such act or thing.

## JURISDICTIONAL PREREQUISITES

11.     On November 14, 2016, the Plaintiffs submitted administrative claim Form 95, attached hereto as Exhibit 1, to the United States Department of Navy. Said Notice was timely and properly submitted and served pursuant to 28 U.S.C. § 2672 and 2675(a) and 28 CFR § 14.2. The claims were acknowledged by on behalf of the agency by the Department of the Navy, Office of the Judge Advocate General, Tort Claims Unit Norfolk. The Parties undertook the exchange and review of medical records, and further information was submitted on behalf of the Plaintiffs. On December 11, 2017, the Department of the Navy denied the claims of D.B., Deardre D. Bebeau, and Daniel J. Bebeau, Sr. The Plaintiffs have complied with all jurisdictional prerequisites and conditions precedent to commencement and prosecution of this litigation.

## FACTUAL BACKGROUND

12.     This is a medical negligence action in which a neurologically intact infant suffered severe, disabling, and permanent brain damage and its sequella because the medical professionals caring for him: (1) failed to properly and timely resuscitate and intubate him at birth and during the newborn period; (2) failed to recognize and ignored obvious signs of distress due to lack of or compromised delivery of blood flow and/or oxygen; (3) failed to timely and properly recognize the obvious risks of meconium aspiration and to perform necessary

interventions; and (4) failed to perform necessary and timely interventions before he suffered a devastating and permanent brain injury.

13.     On or about 4:15 on [REDACTED], 2014, Plaintiff, Deardre D. Bebeau, then 40 weeks 3 days pregnant, presented to the Mother-Baby Unit ("MBU") at the U.S. Naval Hospital, Guam. Mrs. Bebeau presented to the MBU, because she was experiencing painful contractions that started around midnight.

14.     At approximately 5:13, Protegenie Reed, CNM ("CNM Reed") instructed the patient to walk for 2 hours and return for a cervical check.

15.     At approximately 6:00, Mrs. Bebeau's membranes spontaneously ruptured.

16.     At approximately 7:01, CNM Reed admitted Mrs. Bebeau to the MBU, estimated that the fetal weight was 3,200 grams by Leopold's maneuver, and determined that her pelvis was adequate for a trial of labor. At admission, the fetal heart rate was reassuring and reflected a well oxygenated fetus.

17.     At approximately 8:38, Mrs. Bebeau was seen by Samuel F. Livingston, M.D., a family practice doctor, who notified pediatrics of the presence of meconium (fetal stool) in the amniotic fluid.

18.     At approximately 11:38, Stephanie Stratton, M.D. ordered the nurses to start Pitocin and an epidural if requested by the patient. Over the next few hours, the patient was started on Pitocin, which was gradually increased by the nursing staff.

19.     At or around 14:52, an epidural was placed by Tuan Q. Hoang, M.D., an anesthesiologist.

20.     At approximately 16:28, Dr. Stratton noted that the patient was still not in active labor and that the Pitocin should be continued at 6 mu/min.

21.     At approximately 21:55, the nurse, Mary K. Brumbeloe, R.N. ("Nurse Brumbeloe") increased the Pitocin to 11 mu/min.

22.     At approximately 22:25, a vaginal examination by Nurse Brumbeloe found the cervix to be dilated 9 cm, 100% effaced, and the baby now at a 0 station. The patient was noted to have increased vaginal pressure and urge to push.

23.     At approximately 00:01, with the Pitocin infusing at 13 mu/min, Nurse Brumbeloe noted that a vaginal examination by Dr. Stratton found the patient to be fully dilated and the baby at a +1 station. Dr. Stratton removed the IUPC at this time. The patient started pushing with Dr. Stratton, Nurse Brumbeloe and Anna Serrana, R.N. ("Nurse Serrana").

24.     At approximately 00:30, it is noted that Dr. John C. McDonnell, a pediatrician, was called in anticipation of delivery because of the presence of meconium in the amniotic fluid.

25.     The Pitocin continued to be increased during the second stage, and at approximately 0:50, the Pitocin was increased to 15 mu/min.

26.     At approximately 1:56, D.B. was delivered vaginally, approximately nineteen hours and fifty-six minutes after Mrs. Bebeau's membranes had spontaneously ruptured. Thick meconium was noted at birth. D.B. was noted to be floppy and nonvigorous.

27.     It was noted in the medical records that D.B. was handed off to Dr. McDonnell for resuscitation, pursuant to the Neonatal Resuscitation Program. Dr. McDonnell noted that D.B. was intubated for suctioning below the cords, but the meconium aspirator had fallen behind the bed and was not readily available. Dr. McDonnell did not obtain another meconium aspirator or retrieve the aspirator that had fallen behind the bed, but instead decided to simply perform bulb suctioning instead of performing deep suctioning in D.B.'s airway.

28.     At approximately 1:57, D.B.'s 1-minute APGAR score was 1.

29.     Instead of clearing the airway, as required by NRP, Dr. McDonnell and the resuscitation team continued to provide positive pressure ventilation ("PPV") throughout the resuscitation.

30.     At approximately 2:01, D.B.'s 5-minute APGAR score was a 1.

31.     At approximately 2:02, Nurse Serrana noted that a respiratory therapist ("RT") was called since D.B. continued to have no respiratory efforts, a heart rate below 60, and ongoing chest compressions.

32.     Without performing the required suctioning of D.B.'s airway, Dr. McDonnell made two failed intubation attempts. With each attempt there was no color change in the capnography, a sign that something is preventing adequate gas exchange.  Dr. McDonnell noted that an anesthesia provider arrived and attempted to intubate D.B. without first suctioning the airway, and, once again, there was no color change in the capnography.

33.     At approximately 2:04, Vicky A. Rodriguez ("Rodriguez") noted that: "RT arrived, newborn intubated and suctioned with meconium aspirator. CO2 placed. Newborn satting at 0%."

34.     At approximately 2:06, 10 minutes of life, D.B.'s Apgar score continued to be reported as a 1. At 11 minutes of life, Rodriguez documented that "MSU called for extra hands."

35.     Eventually, Dr. McDonnell notes that the anesthesia provider suctioned through the endotracheal tube and breath sounds and color change on the capnography immediately approved.

36.     At approximately 2:15, at 19 minutes of life, Rodriguez noted another intubation attempt with "O2 sats of 52%" and that Dr. McDonnell placed an umbilical venous catheter ("UVC") and delivered .4mg of epinephrine through the UVC with normal saline.

37.     At approximately 2:18, at 22 minutes of life, Rodriguez noted that the RT started bag and mask ventilation.

38.     At approximately 2:20, Rodriguez noted that: "Pulse ox at 23 minutes of life @86% heart rate of 125."

39.     At approximately 2:25, at 29 minutes of life, Rodriguez noted that the UVC had to be replaced because it had fallen in stool, and that three minutes later, at approximately 2:28, the RT noted that the endotracheal tube was at 13 cm at the right lip.

40.     At approximately 3:08, Rodriguez noted that a transport team arrived to take D.B. to Guam Memorial Hospital. She noted that the RT documented noted that the endotracheal tube had been pulled back to 10cm and taped at the right side of D.B.'s lip. Rodriguez also noted that further suctioning was done at this time.

41.     Upon arrival to Guam Memorial Hospital, D.B. was noted to be seizing and phenobarbital was initiated. Hypoxic Ischemic Encephalopathy was presumed and D.B. was started on a cooling protocol, which is noted to have lasted either 30 or 44 hours.

42.     On December 4, 2014, D.B. was transferred to Tripler Army Medical Center in Honolulu, Hawaii. An MRI on December 5, 2014, revealed a profound brain injury compatible with hypoxic ischemic encephalopathy with extensive involvement of the basal ganglia extending into the brainstem with possible optic tract involvement.

43.     As a result of the medical care that he and his mother received at U.S. Naval Hospital, Guam, D.B. sustained significant and permanent brain damage. Had D.B. been timely and properly evaluated, treated, and resuscitated in a timely manner, he would not have suffered permanent neurological damage, cerebral palsy, and its numerous and lifelong sequealae.

## COUNT I: MEDICAL NEGLIGENCE

44.     Plaintiffs incorporate by reference all of the allegations set forth in paragraphs 1-43, as though fully set forth herein.

45.     At all times relevant and material hereto, the Defendant, the United States of America, and its agents, servants, representatives, and employees, undertook a duty to diagnose, treat, protect, and provide hospital, medical, and nursing care in accordance with accepted or prevailing standards of care.

46.     Notwithstanding these duties, the Defendant, the United States of America, and its servants, agents, and/or employees, including but not limited to John McDonnell, M.D., Tuan Hoang, M.D., Stephanie Stratton, M.D., Samuel F. Livingston, M.D., Protegenie Reed, C.N.M., Anna Kristina Serrana Itugot, R.N. f/k/a Anna Serrana, R.N., Mary K. Brumbeloe, R.N., Vicky A. Rodriguez, "LT Jackson", "HN Challinor", and the respiratory therapist, were negligent and fell below acceptable standards of care in one or more of the following ways.

   a.  Failing to have proper procedures in place and/or failing to follow proper procedures concerning the timely and proper resuscitation and intubation of a depressed child at birth and during the neonatal period,

   b.  Failing to adequately instruct, train, supervise, educate or credential its actual or apparent employees, agents, and/or representatives with respect to the timely and proper resuscitation, intubation, and neonatal care at delivery and during the newborn period;

   c.  Failing to provide appropriately trained and skilled personnel to care for Deardre D. Bebeau and D.B. before, and at the time of delivery, including, but not limited to having a pediatrician or other appropriately qualified specialist promptly

available before, or at the time of delivery, to provide proper intubation, resuscitation, and neonatal care;

d. Failing to establish, promote, follow, or enforce appropriate chain of command rules, policies, procedures, protocols, or guidelines in response to physicians' acts or omissions that are likely to lead to serious injury or death;

e. Failing to provide timely and appropriate medical care to D.B. after his birth;

f. Failing to provide proper and timely resuscitative care consistent with the Neonatal Resuscitation Program and/or acceptable standards of care;

g. Failing to properly suction D.B. in a timely fashion;

h. Failing to properly intubate D.B. in a timely fashion;

i. Failing to otherwise adequately ventilate D.B. in a timely fashion;

j. Failing to provide timely and appropriate doses of epinephrine in accordance with prevailing standards of care;

k. Failing to call in a timely manner and ensure that appropriately trained personnel were present at delivery to properly care for D.B.;

l. Failing to adequately instruct, train, or supervise the labor and delivery nurses, respiratory therapists, physicians, and other staff caring for D.B.;

m. Failing to establish, follow, or enforce appropriate policies, procedure, or protocols for patients such as D.B., including, but not limited to policies, procedures, and protocols pertaining to neonatal resuscitation and intubation;

n. Failing to timely and properly record all relevant and necessary information concerning the extent and substance of the neonatal care, resuscitation, and intubation that was performed from the moment of birth, the times the care was

rendered, and the identity of the persons who were present and providing the care
to D.B;

o.  Failing to timely recognize and respond to B.M.'s deteriorating condition due to
meconium and compromised delivery of oxygen and blood flow;

p.  Failing to maintain and protect the airway and provide adequate ventilation;

q.  failing to properly and timely resuscitate and intubate him at birth and during the
newborn period;

r.  failing to recognize and ignored obvious signs of distress due to lack of or
compromised delivery of blood flow and/or oxygen;

s.  failing to timely and properly recognize the obvious risks of meconium aspiration
and to perform necessary interventions;

t.  failing to perform necessary and timely interventions before he suffered a
devastating and permanent brain injury; and

u.  in other negligent acts and/or omissions in the care and treatment of B.M. that
may be discovered and become known during the course of discovery.

47.     At all times mentioned herein and material to this Complaint, the employees,
agents, and/or representatives of the Defendant, including but not limited to John McDonnell,
M.D., Tuan Hoang, M.D., Stephanie Stratton, M.D., Samuel F. Livingston, M.D., Protegenie
Reed, C.N.M., Anna Kristina Serrana Itugot, R.N. f/k/a Anna Serrana, R.N., Mary K.
Brumbeloe, R.N., Vicky A. Rodriguez, "LT Jackson", "HN Challinor", and the respiratory
therapist, were negligent and such negligence directly caused the injuries and damages sustained
by Plaintiffs.

48.     Had the Defendant, the United States of America, by and through its actual and/or apparent agents, servants, employees and representatives caring for B.M. complied with the applicable standards of care, B.M. would have been timely and properly treated at a time before he suffered a permanent brain injury.

### PLAINTIFFS' DAMAGES

49.     Plaintiffs incorporate by reference all of the allegations set forth in paragraphs 1-48, as though fully set forth herein.

50.     As a direct and proximate cause of the individual, joint, consecutive, and concurrent negligent actions and/or omissions of the Defendant, and its employees, agents, and/or representatives, including but not limited to John McDonnell, M.D., Tuan Hoang, M.D., Stephanie Stratton, M.D., Samuel F. Livingston, M.D., Protegenie Reed, C.N.M., Anna Kristina Serrana Itugot, R.N. f/k/a Anna Serrana, R.N., Mary K. Brumbeloe, R.N., Vicky A. Rodriguez, "LT Jackson", "HN Challinor", and the respiratory therapist, the minor Plaintiff, D.B., sustained a hypoxic brain injury.  The hypoxic brain injury was a result of inappropriate, substandard, and negligent medical and nursing care provided by the medical team that was responsible for resuscitating and intubating B.M. at birth and during the neonatal period.

51.     Upon information and belief, the medical team failed to recognize and timely respond to signs and symptoms of neonatal hypoxia, ischemia, and asphyxia, and failed to timely perform necessary interventions to prevent the hypoxic brain injury that occurred.

52.     The signs and symptoms of neonatal hypoxia, ischemia, and/or asphyxia that were present in this case were known, or should have been known, to the medical team, and as a result of inappropriate, substandard, and negligent medical and nursing care, B.M. suffered, and will continue to suffer, severe and permanent brain damage and have proper procedures in place to

neurologic injury and its sequelae, including, but not limited to: neurologic injuries; seizures; cerebral palsy; cognitive and motor dysfunction; speech and language difficulties; pain, suffering, and mental anguish; diminished enjoyment and quality of life; developmental delays; and diminished earning capacity and lost future wages.

53.     As a further direct and proximate cause of the individual, joint, consecutive, and concurrent inappropriate, substandard, and negligent actions and/or omissions of the United States Government and its employees, agents, servants, and/or representatives, the minor Plaintiff D.B. has required, and will continue to require, substantial medical, nursing, attendant, and related care; various types of therapies, such as physical, occupational, speech, rehabilitation, psychological, and pharmaceutical therapies; and other attendant care and assistance with the activities of daily living, specialized devices, equipment, transportation, education, and housing, all of which significant sums of money have been and will continue to be expended.

54.     As a direct and proximate cause of the individual, joint, consecutive, and concurrent negligent actions and/or omissions of the Defendant and its employees, agents, and/or representatives, including but not limited to John McDonnell, M.D., Tuan Hoang, M.D., Stephanie Stratton, M.D., Samuel F. Livingston, M.D., Protegenie Reed, C.N.M., Anna Kristina Serrana Itugot, R.N. f/k/a Anna Serrana, R.N., Mary K. Brumbeloe, R.N., Vicky A. Rodriguez, "LT Jackson", "HN Challinor", and the respiratory therapist, and the resulting injuries sustained by minor Plaintiff, D.B., the Plaintiffs, Deardre Bebeau and Daniel J. Bebeau, Sr., have incurred, and will continue to incur, expenses for the medical, surgical, nursing, therapeutic, rehabilitative, and custodial care and attention for their son, D.B., as well as for specialized equipment, housing, transportation, education, and other needs to accommodate his medical condition.

55.     As a direct and proximate cause of the individual, joint, consecutive, and concurrent negligent actions and/or omissions of the Defendant and its employees, agents, and/or representatives, including but not limited to John McDonnell, M.D., Tuan Hoang, M.D., Stephanie Stratton, M.D., Samuel F. Livingston, M.D., Protegenie Reed, C.N.M., Anna Kristina Serrana Itugot, R.N. f/k/a Anna Serrana, R.N., Mary K. Brumbeloe, R.N., Vicky A. Rodriguez, "LT Jackson", "HN Challinor", and the respiratory therapist, and the resulting injuries sustained by the minor Plaintiff, D.B., the Plaintiffs, Deardre Bebeau and Daniel J. Bebeau, Sr., have been, and will continue to be, deprived of an emotional relationship with D.B. They have suffered, and will continue to suffer, mental pain and anguish, and a loss of D.B.'s services, companionship, and consortium.

## PRAYER FOR RELIEF

WHREFORE, for the foregoing reasons, Plaintiffs, D.B., a minor, by and through his parents and next friends, Deardre D. Bebeau and Daniel J. Bebeau, Sr., and Deardre D. Bebeau and Daniel J. Bebeau, Sr., Individually, respectfully pray that this case proceed to trial, and that the Plaintiffs recover judgment of and from the Defendant, the United States of America, and an award in their favor for actual damages in the amount of ONE HUNDRED FIFTY MILLION DOLLARS ($150,000,000.00) for their injuries and losses, pre- and post-judgment interest, costs and expenses, attorney's fees, and all other and further relief and damages to which the Plaintiffs may show themselves to be justly and properly entitled.

## JURY DEMAND

To the extent that a trial by jury is permitted by law, Plaintiff demands a trial by jury on any issue deemed triable by a jury pursuant to the law.

Dated this 31st day of May 2018,

**D.B., an Infant, By and Through**
**His Parents and Next Friends,**
**Deardre D. Bebeau and Daniel J. Bebeau, Sr.;**
**Deardre D. Bebeau, Individually;**
**and Daniel J. Bebeau, Sr.,**
**Individually, Plaintiffs**

By: ___/s/ Michael F. Imprevento_____
Of counsel

Michael F. Imprevento, Esquire (VSB No. 23926)
Kevin Biniazan, Esquire (VSB No. 92109)
BREIT DRESCHER IMPREVENTO, P.C.
Towne Pavilion Center II
600 22nd Street, Ste. 402
Virginia Beach, VA 23451
(757) 622-6000 (Office)
(757) 670-3895 (Fax)
mimprevento@breitdrescher.com
kbiniazan@breitdrescher.com

**Dov Apfel, Esq.** (*pro hac vice to be applied for*)
dapfel@jjsjustice.com
**Seth L. Cardeli, Esq.** (*pro hac vice to be applied for*)
scardeli@jjsjustice.com
**JANET, JANET & SUGGS, LLC**
4 Reservoir Court, Suite 200
Baltimore, MD 21208
410-653-3200
410-653-9030 (facsimile)

*ATTORNEYS FOR PLAINTIFFS*